JOHN D. ANDERSON, Respondent, *against* ALBERT MEISLAHN, Appellant.

(Decided June 25th, 1883.)

The power of the General Term to review the findings of fact of a referee upon conflicting evidence should be exercised only in extreme cases, where it is clearly manifest to the appellate court that he was wrong.

By a contract in writing plaintiff agreed to erect for defendant certain buildings in conformity with drawings and specifications made by the·

architect, "in a good, workmanlike and substantial manner, to the satisfaction and under the direction" of the architect, to be authenticated by his certificate in writing. The work was to be paid for in nine payments at certain stages as it progressed, provided that "in each of the said cases" or stages of the work, a certificate should be obtained signed by the architect. Eight such certificates were given, by which the architect certified in writing that plaintiff was entitled to eight of the nine payments, respectively; but he refused to give a certificate that plaintiff was entitled to the last payment. At the trial, before a referee, of an action to foreclose a mechanic's lien filed by plaintiff against the buildings, the referee, upon conflicting evidence, and upon an inspection of the buildings made by him by consent of the parties, found that plaintiff had substantially performed the contract, and that the refusal of the architect to give the certificate was unreasonable and in bad faith; that omissions and deviations by plaintiff from the contract, when not expressly authorized, were by inadvertence or from necessity, and there were no fatal defects; and that plaintiff was entitled to recover the part of the contract price remaining unpaid, less an allowance for damage on account of such omissions and variations. *Held*, that the certificates given by the architect were conclusive as to the performance of the work up to the time of the corresponding payments, in the absence of proof of fraud or mistake, or proof that the contract had not, as a whole, been substantially complied with; that such substantial performance was sufficient to entitle the plaintiff to recover; that the questions whether there was such a substantial performance, and as to the nature, amount and value of the omissions and deviations and the circumstances under which they were made, were questions of fact for the referee, and his findings, being fully borne out by the evidence, should not be disturbed on appeal; and that the allowance by him of the sum of $380.20 for such omissions and deviations, the contract price for the buildings being $12,650, did not show that the finding of a substantial performance was erroneous.

Delay by plaintiff in completing the buildings, beyond the time contemplated by the contract, caused by changes in the plans and other circumstances—*Held* not ground for a claim for damages by the owner, he having made no objection to the delay although he knew what took place from day to day.

In building the foundations, plaintiff was compelled to excavate to a greater depth than was provided for by the contract, in consequence of the nature of the soil, which was unknown to both parties. *Held*, that this was extra work, for which plaintiff was entitled to compensation additional to the contract price.

A provision in a building contract that any dispute as to the value of extra work or work omitted shall be settled by arbitration does not bind the builder to have such a dispute settled by an arbitration without witnesses.

APPEAL from a judgment of this court entered upon the report of a referee.

The action was brought to foreclose a mechanic's lien upon certain buildings erected by plaintiff under a contract with defendant, the owner. The facts are stated in the opinion.

*A. R. Dyett,* for appellant.

*Jesse Johnson* and *David Barnett,* for respondent.

CHARLES P. DALY, Chief Justice.—In the testimony, which is voluminous, there is considerable contradiction upon many points, such as the extent, nature and value of omissions and changes, the circumstances under which they occurred, the statement of the architect as to the reasons why he refused to give the last certificate, and other matters, in respect to all of which it must be assumed that the referee believed the plaintiff's witnesses and discredited those of the defendant, where they were in conflict. The conclusions of the referee as to the facts where the testimony is thus conflicting will have to be taken as correct. We have the right to review a referee's findings upon questions of fact where he has found on conflicting evidence; but we do so only in extreme cases, where it is clearly manifest to the appellate court that he was wrong; and this is not one of those cases. He saw the witnesses, heard them testify, and, by consent of the parties, inspected every part of the building in respect to which evidence had been given. He had, therefore, advantages in passing upon disputed questions of fact which an appellate court cannot have.

A material circumstance in this case is that by the contract the plaintiff was to erect the buildings in conformity with the drawings and specifications made by Morell, the architect, "in a good, workmanlike and substantial manner, to the satisfaction and under the direction of the architect," to be authenticated by a certificate in writing. The work was to be paid for in nine payments, in certain stages, as it progressed; and it was further provided that "in each of the said cases" or stages of the work, when the payments

became due and payable, a certificate was to be obtained, signed by the architect. Eight of those certificates were given, in which the architect certified in writing that the plaintiff was entitled to the payment, which must be regarded as certifying that the work, up to the time of each of these payments, had been done agreeably to the drawings and specifications, in a workmanlike and substantial manner, under the direction and to the satisfaction of the architect. The parties having selected their own umpire, who was to ascertain and determine whether the contract had in these respects been complied with, his certificate should be regarded as conclusive and binding upon the defendant, unless the defendant could show it was obtained by fraud or mistake, or it appeared that the contract had not as a whole been substantially complied with. See *Wyckoff* v. *Myers*, affirming judgment of this court (44 N. Y. 145); *Butler* v. *Tucker* (24 Wend. 449), in which it is said that " when parties fix on an umpire and agree to abide by his decision, neither of them, without the consent of the other, can withdraw the question of performance from the common arbiter;" *Smith* v. *Brady* (17 N. Y. 175, 176); *Glacius* v. *Black* (50 N. Y. 151).

Unless something, such as above stated appears, the certificate is conclusive, and the inquiry as to non-performance is limited to what was required to be done to entitle the plaintiff to the last payment, the architect having refused to give a certificate to entitle the plaintiff to receive that payment.

The architect testifies that a list was kept by the defendant and himself of the omissions, &c., the main portion by the defendant. He says: " All along, during the progress of the work, we had an express understanding that that should be done; and when the defendant objected to certain things, my answer was that 'everything may be adjusted at the last under the clause in the contract of omissions and deviations, and I think you will have no difficulty in doing it,' or something to that effect; 'we will keep a list as the work goes on;'" and that the defendant did so; and that he, the architect, also kept a list as to some things.

It does not appear that the plaintiff was a party to this understanding; and there is no such clause in the contract. The contract simply provides that, "should the owner, at any time, during the progress of the building, request any alteration, deviation, additions or omissions from the contract, he shall be at liberty to do so; and the same shall in no way affect or make void the contract, but will be added to or deducted from the amount of the contract, as the case may be, by a fair and reasonable valuation." This clause relates only to omissions or deviations requested by the defendant; and there is nothing in it authorizing the defendant and the architect to keep a list of omissions and deviations and have them adjusted, as he says, at last under this clause of the contract. That he did not in fact so understand it, or that any such right existed, is evident from his statement that he told the plaintiff (which the plaintiff denied) or his lawyer when the final certificate was applied for, that he "would give a conditional certificate, giving himself and the defendant the right to go back to these omissions." Instead of keeping a list of these alleged deviations or omissions, as the work went on, it was the plain duty of the architect, before a payment was to be made and the certificate given, to see that the work so far had been done in accordance with the contract, and to refuse to give the certificate at that stage if there were omissions or deviations unauthorized by the contract, and in good faith to make known to the plaintiff the nature of the objections, that he might then supply the omissions or correct the deviations before further progress was made in the building, when it might be impossible to do so. The architect himself testified that, in an interview with the plaintiff, at which he refused to give the certificate for the last payment, he had not, prior to that time, informed the plaintiff of all the particulars in which the plaintiff had not performed his contract; that there was then no other way than to arrange differences, the remedying of defects being then out of the question; and that all he and the defendant wanted was a fair allowance in consideration of the

changes and substitutions.  The architect testified that
prior to the interview with Christian, which was when the
last certificate was demanded, he called the plaintiff's at-
tention to the certain matters or points, as he called them,
of non-compliance with the contract, which he enumerated
in detail.  He does not say at what period, prior to that in-
terview, he so informed the plaintiff: and the plaintiff denies
this statement.  He says, "Morell did not so inform me on
these points."  So we must assume, on the referee's find-
ings of fact, that, up to the time when the last certificate
was demanded, the plaintiff's attention had not been called
by the architect to the deviations and omissions enumer-
ated in his testimony.  He does say, however, that three
months before the interview with Christian he called the
plaintiff's attention to a broken beam, which was mended
by nailing a piece of board on one side of it; that he told
him that it was not workmanlike to patch up the beam;
that a new beam should have been put in.  But the plaint-
iff's witness, Hagen, testifies that the architect called his
attention to this split or broken beam, and that he told him
to put two planks on the side, which he did; so that this
patching of the beam which he testified to as unworkman-
like, was done, according to this evidence, by his direction.

If anything remained to be done in compliance with the
contract, the architect was right in refusing to deliver the
certificate; but the testimony in the case, and which, we
must assume the referee believed, is that his refusal was not
put on this ground, but because the defendant had told him
not to give it; and that he could not do it, because the de-
fendant was a friend of his; that the defendant held a good
deal of property, was a man of influence; and if he gave
the certificate it would break friendship between them.
This was said when Barnett, the plaintiff's attorney, de-
manded the certificate for the last payment.  Barnett tes-
tified that the architect admitted that the plaintiff had
subtantially completed his contract; that there were, how-
ever, some little things to be done.  When the attorney told
him that it was his duty to elect whether he should do his

Anderson v. Meislahn.

duty to the plaintiff on the one hand, and sever his friendship with the defendant on the other, he continued to repeat that he did not want to part friendship with the defendant; upon which the attorney told him that if he would put in writing the little things referred to he would guarantee that the plaintiff would carry them out; to which the architect answered that to do those little things would please the defendant, and he would make a list of them; which, it appears, he did, and gave it to the plaintiff; but when the plaintiff sent his men to the buildings to do what was required they were not allowed to do it, either by the defendant or those who were in charge. This witness testified that Morell, the architect, affirmatively stated to him in substance that the plaintiff had erected the buildings and performed his contract according to the plans and specifications, with the exceptions of the little things referred to; and the plaintiff testified that, at the interview with Christian above referred to, he asked the architect if he knew of any cause why he, the plaintiff, should not have the certificate; and if anything was left undone on his part, he was ready and willing to do it, as he wished to transfer his claim to the payment to Christian; and that the architect replied, as he had done before, that he did not want to offend the defendant. The plaintiff also testified that the architect then said that he, the plaintiff, had substantially completed his contract, and that what little things remained undone amounted to a mere nothing. The plaintiff also corroborated what occurred at the interview testified to by his attorney. He swore that the architect then said that the plaintiff had substantially complied with his contract, but that there were some little things that created a feeling; that the attorney asked him to put them in writing, which he afterwards did. The architect denied having made these statements as broadly as testified to by these witnesses; but said he thought he did state that there was very little to be done, and that the work was substantially completed; that he had advised the defendant to settle the matter on the best terms possible, and accept the buildings as they

were, and get rid of the matter, as there were no fatal defects in them; that they would serve the purpose for which they were built; but that the defendant had refused, and consequently he could not and dared not give the certificate; that, in his opinion, it would not be doing justice to the defendant if he did; that he was put in a very uncomfortable position, as he and the plaintiff had done a good deal together, in a friendly way; that he wished to retain the defendant's friendship; hoped every means would be used to effect a settlement without trouble, and recommended an arbitration; so that, by his own statement, he wished to get rid of deciding absolutely upon the rights of the parties, as he was bound to do, being the architect and umpire selected by them, under whose supervision the building was erected, and whose certificate was made a condition precedent to payments; and to shift the responsibility from himself to others, by advising the parties to settle by arbitration, what was incumbent upon him to settle, either by giving the certificate or by positively refusing to give it upon the ground that the buildings had not been completed according to the plans and specifications. Believing the plaintiff's witnesses, the referee found that the architect, unreasonably and in bad faith, refused to give the certificate; and upon the evidence of the plaintiff's witnesses, I think he was justified in so finding.

The delay in completing the buildings within the time contemplated was fully explained by the plaintiff's witnesses. It arose from changes made in the plans, by extra work, delay caused by the plumber (which was one of the controverted points in the evidence), bad weather, during which it was impossible to plaster, and other circumstances; the fact also being, as found by the referee, that the defendant was present nearly every day at the buildings during the progress of the work, overlooking it with great care and particularity, and yet he never complained of or made any objection as to the delay—for the obvious reason, it may be assumed, that he was himself cognizant of the cause of the delay, as he knew what took place from day to day. Under

these circumstances, the referee properly held that he had no claims for damages upon this ground. The referee also found, and is fully borne out by the evidence, that the plaintiff had not wilfully departed from the terms of his contract; that omissions or departures, where not expressly authorized, were by inadvertence or—as the plaintiff believed—from necessity; that there were no fatal defects or omissions; that the plaintiff substantially performed the contract, except a few trifling omissions, which the plaintiff tendered and offered to supply. He, however, went behind the certificates that had been given, and made an allowance to the defendant, to the amount of $380.20, embracing thirty-five items of omissions or variations from the contract, which, as respects their nature, amount, value and the circumstances under which they were made, were within the rule that where the builder has in good faith intended to, and has substantially, complied with the contract, although there may be slight defects, caused by inadvertence or unintentional omissions, he may recover the contract price, less the damage on account of such defects (*Woodward* v. *Fuller*, 80 N. Y. 312; *Phillips* v. *Gallant*, 62 N. Y. 264).

In adverting, in the last cited case, to the difficulty of complying with entire exactness, in this class of contracts, as the reason why the apparent rigor of the general rule has been so far relaxed as to make a substantial compliance sufficient, the court say, in interpretation of the general rule as so modified, that there must not be wilful or intentional departure; the defects must not pervade the whole work, or be so essential that the object which the parties had intended—a specified amount of work, performed in a particular manner—is not accomplished. And this test fully meets the nature of the omissions or deviations in this case. Nor does it vary the application of this rule, that the work was to be done under the direction and to the satisfaction of an architect (*Nolan* v. *Whitney*, 88 N. Y. 648; *Smith* v. *Brady*, 17 N. Y. 176; *United States* v. *Robeson*, 19 Pet. 319; *Glacius* v. *Black*, 50 N. Y. 153); for, as was held

in the last cited case, even the obtaining of the architect's certificate does not authorize a recovery where it appears that the contract as a whole was not substantially performed; or, as was said in that case, if the defects and omissions are so numerous and pervading as so show that the whole work was done in a manner so improper that it does not substantially conform to the plans and specifications.

Where there have been defects and omissions of this kind, the question whether there was or was not a substantial performance is a question of fact for the referee upon the whole evidence (*Nolan* v. *Whitney*, 88 N. Y. 648; *Johnson* v. *DePeyster*, 50 N. Y. 666; *Glacius* v. *Black*, Id. 145), with whose conclusion an appellate court will not ordinarily interfere.

The omissions or deviations in this case amounted, in value to only $380.20 in a contract where the plaintiff was to receive $12,650 for erecting the buildings, and the amount allowed was not such as to show that the finding of a substantial performance was erroneous. In *Phillips* v. *Gallant* (*supra*), the defects were found to be of the value of $75, where the amount to be paid for the work was but $800, and it was held that the court could not say, as matter of law, that because of the allowance of that sum the contract was not substantially performed. They declared it to be a question of fact, upon which the decision of the referee was conclusive.

The defendant called witnesses to examine the buildings after their erection, whose estimate of the extent and value of the omissions appears to be greater than this amount. But this also was a question of fact for the referee, in view of the statement of the architect himself, of the omissions to which, as he testified, he called the attention of the plaintiff; and his statement, which he did not contradict, that there were only a few small matters remaining, of which he would, and did, give a list. His further statement, also, that there were no fatal defects in the buildings; that they would serve the purposes for which they were built; that

there was very little to be done, and that the work was sub-
stantially complete; his admission, and the proof by other
witnesses, that where deviations had been made, not strictly
in conformity with the contract, what was done or substi-
tuted was equally as good—all this was evidence, making
the extent and value of the omissions or deviations a ques-
tion exclusively for the referee, who appears in these allow-
ances to have embraced all the omissions inferable from
what he believed to be the facts, upon the conflicting evi-
dence; and his finding, in this respect, should not be dis-
turbed.

A question arose upon the extra work, whether the plaint-
iff was bound to go below ten feet from the curb in laying
the foundation, it having been discovered when they had
reached that depth that, in consequence of the sandy nature
of the soil below, they would have to go deeper to build
the foundation. This was a contingency that the plaintiff
had not assumed. The provision in the contract was that
he was to excavate to a depth of not less than ten feet, and
the building of the foundation from this additional depth
was work for which no provision had been made in the con-
tract, the nature of the soil at that depth being unknown
to both. The referee held it to be extra work, for which
the plaintiff was entitled to recover, which I think was
correct.

By the terms of the contract, if any dispute arose as to
the value of the extra work or of the work omitted, it was
to be settled by arbitration. There being such a dispute,
each party selected an arbitrator, but the lawyers' of the
respective parties could not agree in the framing of the
agreement under which the arbitrators were to act. The
plaintiff's attorney prepared it, but the defendant's attorney
struck out the clause allowing witnesses to be produced
before them, saying that if witnesses were to be called,
there was no use in having an arbitration; that it was better
at once to have a suit brought and have a reference, to
which the plaintiff's attorney did not agree. The plaintiff
was not bound by this clause in the agreement to have the

matter settled by arbitration without witnesses (*In re Jen-kins*, 1 Dowl. N. S. 276; *Salkeld* v. *Slater*, 12 Adolph. & El. 767; *Day* v. *Hammond*, 57 N. Y. 479).

It may have been necessary to show or explain by them the nature of the extra work, or otherwise to settle the dispute respecting that work.

The arbitration, therefore, did not fall through by the act of the plaintiff alone. It was mainly the act of the defendant or of his attorney. Both must be regarded as acquiescing in its abandonment, and the question had to be decided in this action. The case is a very different one from *Altman* v. *Altman* (5 Daly 436).

The objections taken by the defendant to the admission or the exclusion of testimony are not of sufficient importance to be reviewed specifically. It is enough to say generally that none of them were sufficiently material to call upon us to set aside this report and order a new trial.

The judgment entered upon the referee's report, therefore, should be affirmed.

J. F. DALY and BEACH, JJ., concurred.

Judgment affirmed.