86  331<br>27ap515

SENECA DUELL and Another, Respondents, *v.* SARAH R. McCRAW, Appellant.

*Authority of an architect inferred from the owner's acts — effect of an architect's certificate — waiver of the certificates and of strict performance.*

Ordinarily building contractors have the right to infer from the conduct of the owner that the architect has authority from the owner to consent to the modification of the contract in the character or manner of laying the foundation walls of a building.

An architect in certifying that a payment is due, which by the contract was payable " when the foundation is complete," in effect certifies that the foundation was completed according to the contract, and ordinarily this will be conclusive except where fraud or mistake is shown.

Circumstances under which it will be presumed that the owner has waived the production of an architect's certificate as to the final payment, and for extra work and material, considered.

Circumstances under which a party is relieved from the strict performance of a contract, and the rule permitting a substantial performance and an allowance for defective work will be applied.

APPEAL by the defendant, Sarah R. McCraw, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Broome on the 30th day of April, 1894, upon the report of a referee.

*Curtiss & Newell*, for the appellant.

*Millard & Stewart*, for the respondents.

MERWIN, J. :

This action is brought to recover a balance claimed to be due on a building contract. On the 24th of October, 1890, the plaintiff Duell and the defendant entered into a contract in writing for the erection by Duell on or before April 1, 1891, of a store and tenement block on a lot owned by defendant on State street in the city of Binghamton. Specifications and drawings were attached that were made by an architect, Mr. Reynolds. The work was to be done under his direction to his satisfaction, and its performance was to be attested by his certificate. The price was $7,150, of which $400 was payable when the foundation was completed, $500 when the frame was up and sheathed, $1,000 when the brick work was finished, $1,000 when the block was inclosed, $1,000 when the block was plastered, $1,000 when the block was cased and trimmed, and the balance of $2,250 when the block was completed, " provided that in each of the said cases a certificate be obtained from the architect that the payment is due." The sixth clause of the contract was as follows : " *Sixth.* Should any dispute arise respecting the true construction or meaning of the drawings or specifications the same shall be decided by the architect, and his decision shall be final and conclusive, but should any dispute arise respecting the true value of extra work, or works omitted, the same shall be valued by two competent persons, one employed by the owner and the other by the contractor, and those two shall have the power to name an umpire, whose decision shall be binding on all parties." The tenth or last clause was as follows : " *Tenth.* The last payment on this contract shall not be paid until all charges for extra work and allowances for omissions have been rendered, agreed to and certified by the architect."

Soon after the contract was executed the work was commenced, the plaintiff Carrington having by transfer from Duell, with consent of defendant, become owner of a one-half interest. The rear of the lot was low ground, and in the specifications there was the following clause : " The ground being soft where rear of building is located it will be necessary to dig a trench four feet deep and six feet wide, and fill with concrete two feet deep composed of broken stone and the proper proportions of Howe's Cave cement and as directed by architect. The water in the cove will have to be drawn

back and kept pumped out until the foundation is complete. Concrete foundation to be extended forty feet on either side of building if considered necessary by architect."

It was soon found that the character of the ground where the rear wall was to be located was such that the concrete foundation specified in the specifications would not answer the purpose. The plaintiffs so informed the defendant, who replied that they must consult the architect about any changes in the foundation. Thereupon the architect, at the expense of the defendant, caused rows of spiles to be driven as a basis for the rear foundation wall, and upon these the plaintiffs by direction of the architect built the wall, and it was agreed between the plaintiffs and the architect acting for the defendant that the sum of sixty-five dollars should be allowed by the plaintiffs to the defendant out of the contract price for the concrete not used under the rear wall as called for by the specifications. The work proceeded, and on or before January 26, 1891, the foundation walls were completed, and soon thereafter they were inspected, measured and accepted by the architect, and on the 27th of March, 1891, he issued his certificate No. 1 stating that $500 was due the plaintiffs. This amount included the first payment of $400 on the contract, and the delay in issuing the certificate was occasioned by the filing of a lien by the mason who constructed the walls. On this certificate the defendant paid $485. On the 21st of February, 1891, the architect issued his certificate No. 2 for $500; on March 1, 1891, his certificate No. 3 for $1,000, and on March 24, 1891, his certificate No. 4 for $1,000, and the defendant paid the plaintiffs the full amount of these certificates. After the issuing of these certificates a dispute arose between defendant and one Lee over the materials furnished by him for the plastering in the building, and the architect issued no certificate for the payment due when the plastering was completed, and has never issued any further certificates. It is not claimed that the plaintiffs are responsible for the contest with Lee. The defendant afterwards, without a certificate from the architect, paid the plaintiffs, on the 18th of April, 1891, the sum of $500; on April 30, $1,000; on May 10, $245; on May 13, $125, and on May 23, $600. These payments amounted to $5,455. Adding thereto the amount of the claim of Lee, $579.35, which the defendant assumed, also the sum of $65 allowed as here-

inbefore stated on account of not using concrete, and the sum of $105 agreed to be deducted from the contract price on account of changes made soon after the execution of the contract, there remained of the contract price the sum of $945.65. The building was not completed by April first, but the delay, as the referee properly finds, is not chargeable to plaintiffs as it was mainly occasioned by the change in the basis of the foundation wall.

The main controversy at the trial was in relation to the settling of the rear, side and center walls, its cause and the consequent injury to the building, and also over the question of acceptance.

There is no doubt that the walls settled to some extent, but the evidence is conflicting as to how much and also as to the effect. The defendant claimed that the settling was mainly due to the improper foundation of the side and center walls and the failure to bind the center to the rear wall, while the claim of the plaintiffs was that the settling was attributable to the manner in which the piling was placed by the defendant under the rear wall, and the failure to place it to some extent under the other walls. The main defect claimed to exist in the foundation of the side and center walls was the failure to lay a concrete basis. This was not required by the architect, and the defendant suggests that he had no discretion to dispense with it under the terms of the specification on that subject above quoted. We are, however, inclined to think that he had. That was his interpretation of the provision, and, under the contract, in case of doubt in the construction or meaning of the drawing or specifications, he was the arbiter. He accepted the walls knowing the concrete was not there. It is also claimed that the base course under the side and center walls does not conform to the specifications. It is, however, in effect, found that they were constructed under the direction of the architect, and that when he gave the certificate No. 1, which covered the first payment, he knew that the base course was not in all respects such as was called for by the plans and specifications, and he knew the general character, size and quality of the base courses complained of. The defendant claims that, in regard to these base courses and their foundation, the plaintiffs were guilty of concealment and fraud, but the referee declines to so find, and this finding should not, we think, be disturbed. It is also found that the building was constructed under the direction

of the architect, who was also employed and paid by the defendant to superintend its construction; that, as the work progressed, the original plans and specifications were departed from in many respects, but such departures were either authorized by defendant or the architect, or were waived or excused, and the work accepted after it was completed; that there are numerous defects in the construction of the building, but they are not of such a character as to pervade the whole work, and the most serious defects did not arise from and were not caused by any willful acts of the plaintiffs, and are susceptible of remedy; that the plaintiffs substantially performed the conditions of the contract before the commencement of the action, except such as were modified, waived or excused, and the plaintiffs intended in good faith to comply with the terms of the contract. These findings are challenged by the defendant, but in view of the acceptance, to be hereafter referred to, and the allowances made by the referee for defects, we find no good reason for the defendant to complain. It is suggested that the architect had no authority from the defendant outside of that given by the contract, and at one period in the course of the trial, it seems to have been so conceded. Still, afterwards, it was proved, without objection, that defendant employed the architect to overlook and superintend the building, and the finding of the referee on the subject is fully supported. It is quite clear that the plaintiffs, from the conduct of the defendant, had the right to ·believe that the architect had authority from her to consent to modifications in the character or manner of laying of the foundation walls. (*Thomas* v. *Stewart*, 132 N. Y. 580.)

The architect, in certifying that the payment was due which, by the contract, was payable "when the foundation is complete," in effect certified that the foundation was built according to the contract. Ordinarily this would be conclusive except for fraud or mistake. (*Wyckoff* v. *Meyers*, 44 N. Y. 143; *Anderson* v. *Meislahn*, 12 Daly, 149.) The referee finds that the architect, when he gave his certificate as to the basement, did not know of the manner in which one of the side walls was laid over a portion of a stump, and to remedy this defect the referee allowed the defendant the sum of ninety dollars. He also found, quite favorably to the architect, that he did not know of the failure to bind a portion of the center

wall to the rear wall, and to remedy this defect he allowed the defendant the sum of $220. To remedy minor defects in other portions of the building the referee allowed the defendant the sum of $111, making in the aggregate the sum of $421 allowed for remedying defects.

Upon the subject of acceptance the referee finds : "*Forty-fifth.*— That on the 2d of May, 1891, the defendant, in company with said architect, went to said building where plaintiffs were at work and requested plaintiffs to allow defendant to move a family into said building. In reply to such request the plaintiff Duell stated to the defendant and said architect in substance that he was unwilling to permit defendant to move into said building unless she would accept the building as far as the work had been completed. Whereupon said architect, in the presence of defendant, said to plaintiffs in substance that they were satisfied with the work as far as it was completed excepting the plastering, and that if plaintiffs would allow them to take possession of said building defendant would pay plaintiffs when they finished the building for the balance unpaid on the contract, including extra work, except the sum of $579.35, the amount of Lee's claim, for materials used in plastering ;

"*Forty-sixth.*— That relying upon the statements made by defendant and said architect, plaintiffs then and there consented that defendant might move into the building, and on that day she moved a tenant therein, and the plaintiffs surrendered up to her the possession of said building, since which time the defendant has been in possession and occupancy of said building ;

"*Forty-seventh.*— That on said 2d day of May, 1891, when defendant took possession of said building, plaintiffs had nearly completed the same, there remaining to be done some work on the stairs, the hanging of a few doors in the rear of the building upon the lower floor or floors, the putting in of two or three windows in the cellar, and some painting upon the inside in the rear of said building ;

"*Forty-eighth.*— That within a few days thereafter plaintiffs substantially completed what remained to be done upon said building, and called upon defendant for the balance of their pay."

The evidence is sufficient to sustain these findings. The defendant afterwards made payments to the extent of $970, the items being above stated, and no certificate was asked for. The defendant took

upon herself the adjustment of the Lee claim, and the amount of it was, by consent, deducted from the contract price. The controversy over the Lee claim seems to have been the occasion of the architect's stopping his certificates. Inferentially the dispute between Lee and the defendant continued after this suit was commenced. The plaintiff, before commencing suit, applied to the architect for a final certificate, which he declined to give. The referee allowed extras to the amount of $127.19. The evidence fully sustains this allowance, but the amount was not agreed to by the parties or the value ascertained in the manner specified in the sixth clause of the contract. It is found, however, that the plaintiffs, before suit, proposed to the defendant that the same be valued by two competent persons, one to be appointed by the plaintiffs and the other by the defendant, they to have power to name an umpire, but the suggestion was not entertained by defendant, and she omitted and neglected so to do. (*Smith* v. *Alker*, 102 N. Y. 87.)

The referee held that by the agreement of May 2, 1891, followed by the taking of possession by defendant, there was a waiver by defendant of an architect's certificate as to the final payment, or for the extra work and materials. The authorities sustain the referee in this conclusion. (*Flaherty* v. *Miner*, 123 N. Y. 382, 390; *Smith* v. *Alker, supra; Fallon* v. *Lawler*, 102 N. Y. 228; *Nolan* v. *Whitney*, 88 id. 648.)

An item of $200 was allowed the plaintiffs by the referee in regard to which some question is made. The plaintiff Duell, soon after the making of the contract, discovered that he had made a mistake of $300 in his figuring on the brick work. He informed the defendant of this mistake, and then, as the referee finds, it was agreed between him and defendant that he should go on and complete the building, and, when completed, he should exhibit to defendant his bills showing the cost of constructing the building, and, if it appeared that he had not made anything upon the contract, the defendant would allow him the sum of $200 in addition to the amount specified in the contract. The cost of construction was in fact $7,428.39. It is found that after the building was completed, and before suit, the plaintiffs at different times demanded of defendant a settlement and payment, and were ready and willing to show defendant their

bills, and what they had paid out in erecting the building, and asked defendant to fix a time when she would look over their bills, but defendant neglected and omitted so to do, or to pay plaintiffs the balance unpaid on the contract. It is not claimed that there was not a sufficient consideration for the agreement of the defendant (*Munroe* v. *Perkins*, 9 Pick. 298, 305; *Lattimore* v. *Harsen*, 14 Johns. 330; *Stewart* v. *Keteltas*, 36 N. Y. 392; 3 Am. & Eng. Ency. of Law, 836, note), but it is claimed that the plaintiffs did not exhibit their bills. They seemed to have been ready to do it, but the defendant did not care to settle. We think the item was properly allowed. At the trial one of the questions in dispute was whether the defendant in fact made a certain payment which the plaintiffs denied. This was clearly a question of fact, and the conclusion of the referee should not be disturbed.

We have thus considered what appear to be the main features of the case. The more important issues were on questions of fact. In view of the acceptance and promise, and subsequent occupancy by the defendant, a case is presented where strict performance in every particular should not be deemed a condition precedent to the plaintiffs' right of action on the contract, but the rule as to substantial performance (*Woodward* v. *Fuller*, 80 N. Y. 312; *Murphy* v. *Stickley Simonds Co.*, 82 Hun, 158, and cases cited) should be applied and the plaintiffs be allowed to recover the balance of the contract price, less the damages from defects attributable to the plaintiffs and not waived by the defendant. The referee has proceeded on this basis, and we find no good reason for disturbing the result.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment affirmed, with costs.