## TILDEN v. BUFFALO OFFICE-BUILDING CO.

(Supreme Court, Appellate Division, Fourth Department.　March 26, 1898.)

1. BUILDING CONTRACTS—PERFORMANCE—ARCHITECTS' CERTIFICATE.

A building contract provided that the final payment thereon should be made only on a certificate of the architects that the work was completed to their satisfaction. The certificate was headed, "Final recommendation," and stated, "We recommend, under the terms of the contract," etc., the payment demanded by the contractor, which the architects sent to the owner in a letter inclosing the contractor's bill. *Held*, that it was sufficient to inform the owner that in the architects' opinion the builder was entitled to final payment, and, in the absence of fraud or mistake, was the same as if it had stated that the work was finished to their satisfaction.

2. SAME—WAIVER.

Where the owner does not base his refusal to make a payment due on a building contract on the failure of the architects' certificate to comply with the requirements of the contract, he waives his right to insist on that defense when sued on the contract.

Appeal from trial term, Erie county.

Action by Jared H. Tilden against the Buffalo Office-Building Company. From a judgment entered on a verdict for plaintiff, and from an order denying a motion for a new trial, made on the minutes, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Norris Morey, for appellant.
Ansley Wilcox, for respondent.

ADAMS, J.　On the 26th of April, 1893, the plaintiff, who is a contractor, entered into a written contract with one John H. Smith to erect a large office building in the city of Buffalo. By the terms of this contract the building was to be completed by the 10th day of April, 1894, and the price to be paid therefor was $124,000. In the month of August following the execution of the contract the defendant was duly substituted as a party thereto in the place of Smith, who was at that time the defendant's president, and this action is brought to recover a balance of $3,117.45, which it is claimed is due the plaintiff upon the contract, and for extra work done and materials furnished by him, after deducting the sum of $371.27 for work and materials embraced in the contract which were omitted by direction of the defendant. The plaintiff's demand consists of seven items, the first of which is for a balance of $1,700, claimed to be due upon the contract proper, and the remainder are for "extras." With the exception of the item of $459.25 for "extra work and materials, concrete in quicksand pockets," the correctness of the plaintiff's claim was not disputed upon the trial; but it was nevertheless asserted by the defendant that it was under no legal liability to pay the same, for the reason that at the time this action was commenced the plaintiff had omitted to furnish the certificate of the architects which was required by the contract as a condition precedent to final payment, and for the further reason that the item of $459.25 above mentioned was for work and materials which were properly embraced in and contemplated by the contract. It

was further contended that the plaintiff had failed to comply with the requirements of the contract in regard to the quality of pine used for flooring, in consequence of which the defendant claimed to have suffered damage in the sum of $1,000, and this amount was set up in its answer by way of counterclaim to the plaintiff's demand. The record in the case brings up for review several questions pertaining to these various defenses which arose during the progress of the trial, and in the decision of which it is alleged error was committed by the learned trial court which was prejudicial to the defendant's interest. To the consideration of these questions we will now proceed to direct our attention.

So far as the defense relied upon by way of counterclaim is concerned, but little need be said. The contract and specifications provided that:

"The finished wood floors of the entire building are to be of clear Georgia or Southern pine, thoroughly seasoned and kiln-dried, matched and laid closely, and blind-nailed to place. This flooring must be 1⅛" thick, and the face not over 3" wide. This flooring must be of the very best selection, every board quarter-sawed, sometimes called 'riff-sawed'; and unless it is perfectly well matched, so that it lays thoroughly even and smooth, it must be hand-planed after being laid."

The evidence on the part of the defendant tended to show that the material used in the floors was of an inferior quality to that above specified, in that it was what is termed "sappy," and that, in consequence of this defect, it very soon changed color, and looked dark and dingy. It was, however, made to appear upon the trial that there are several grades of Georgia or Southern pine; that the only grade which does not contain any sap is what is termed "heart-face" lumber, which is never used unless specifically mentioned in the contract; that the next grade, which is termed "first and second clear pine," contains 10 per cent. of sap; and a number of witnesses called by the plaintiff testified that the term "clear Georgia or Southern pine" meant this grade, and that this was the grade used by the plaintiff in fulfilling his contract. It was further contended by the plaintiff that the change in the color of the flooring was due to the fact that it had been improperly treated by the defendant after it was laid, and some evidence was given tending to sustain this contention. It is very apparent, therefore, that, as respects this particular feature of the case, an issue of fact was raised, and, as this issue was submitted to the jury in a charge which was exceedingly fair, it must be deemed settled by the verdict.

The defendant's contention in respect of the claim for extra work in the "quicksand pockets" is subject to very much the same stricture. It seems that the original specifications provided that, "if any pockets of quicksand are found, this contractor shall excavate the same, and then fill in solidly with cement, concrete, and broken stone." This provision was objected to by the plaintiff before bidding for the work, and the architects thereupon assured him that it was a mistake which would be corrected, and that he might bid upon the assumption that he would not have to fill the quicksand pockets over one cubic yard in size without extra compensation. Subsequently the specifications were corrected so as to read: "If any pockets of

quicksand are found not larger than one cubic yard, this contractor shall excavate the same, and then fill in solidly with cement, concrete, and broken stone." The defendant claimed that this alteration was unauthorized, and was made by the architects without its knowledge or consent; but Mr. Smith testified that at the time the contract was signed it was understood that the architects were to prepare new specifications to conform to several changes which had been agreed upon; and it is conceded that a copy of the specifications as so amended, and which contained the alteration respecting the sand pockets, was thereafter delivered to each of the parties, and that the one delivered to Smith was retained by him during the progress of the work, although he claims that he did not discover this particular change, or hear anything in regard to it, until the plaintiff presented his claim for extra work. On the other hand, however, the plaintiff and his assistant, Mr. Flynn, both testified that Smith was present at the office of the architects when the subject was discussed, and that it was then stated by Mr. Green, one of the architects, that the new specifications should be changed so as to conform to the assurance which had theretofore been given to the plaintiff. Upon the trial it was contended by the plaintiff's counsel that the architects were authorized, as matter of law, to make this change, but the court expressly instructed the jury that such was not the case, and that, so far as this item was concerned, the plaintiff could not recover, unless they were satisfied from the evidence that Smith knew, and assented to, the change in the specifications at or before the time when the contract was actually signed. As has been indicated, the evidence upon this branch of the case was quite conflicting, and, this being so, no sufficient reason is presented for interfering with the verdict, which, in effect, finds that the alteration was made with the knowledge and acquiescence of the defendant.

We come, therefore, to a consideration of what may doubtless be regarded as the paramount question in the case. At the time the plaintiff presented his claim, and demanded payment thereof, the structure had been completed, and was in the possession of the defendant. This fact makes it perfectly obvious that the amount claimed was in full satisfaction of all moneys which the plaintiff would be entitled to receive under his contract. In short, it was the "final payment" which the plaintiff was demanding, and both he and the defendant so understood it. The contract provided that payments were to be made upon the written order of the architects, "it being understood that the final payment shall be made within thirty days after this contract is completely finished; provided, that in each of the said cases the architects shall certify in writing that all the work upon the performance of which the payment is to become due has been done to their satisfaction"; and it was insisted upon the trial that no such certificate as is here contemplated was presented by the plaintiff, and that, consequently, he was in no position to enforce the payment of his claim. So much of this contention as is based upon the failure of the plaintiff to furnish a certificate which complied literally with the requirements of the contract is not controverted. Neither is it denied that a certificate of the architects was, within the strict requirements of the contract, a condition precedent to the right of the plaintiff to insist upon a

final payment; but it is argued that a certificate which was in sub-
stantial conformity to these requirements was all that the defendant
had a right to exact. The object of the provision which we are con-
sidering was obviously to furnish satisfactory evidence to the owner
that not only had the contract been fully completed, but that it had
been performed in a manner satisfactory to the architects, upon whose
superior judgment and experience in such matters reliance was placed.
No precise form for this certificate was prescribed, and consequently
a notification in any form which would fairly and reasonably accom-
plish the purpose for which it was designed, and which was, in effect,
what the contract called for, was doubtless sufficient. Wyckoff v.
Meyers, 44 N. Y. 143. In the case of Snaith v. Smith, 7 Misc. Rep.
37, 27 N. Y. Supp. 379, the contract required as a condition precedent
to final payment substantially the same certificate as the one specified
in the present contract; but, in lieu thereof, the architect simply
certified that there was due the plaintiff "the final payment on his
contract, * * * the sum of $1,169." It was held, upon the au-
thority of Wyckoff v. Meyers, supra, that when the architect certified
that the last payment was due according to contract it was equivalent
to certifying that the work was fully done, and that the builders were
entitled to the last payment. In Duell v. McCraw, 86 Hun, 331, 33
N. Y. Supp. 528, it was held that an architect, in certifying that a pay-
ment was due, which, by the terms of the contract, was payable "when
foundation is complete," in effect certifies that the foundation was com-
pleted according to the contract. In the case in hand the certificate
was headed "Final Recommendation." It was dated February 7, 1895,
and addressed to "Mr. John H. Smith, President." Then followed
this language:

"We recommend, under the terms of the contract dated April 26, 1893, for
work upon Union Central Life Building, that Mr. J. H. Tilden, contractor
for mason, iron, steel, carpenter, painting, glazing, and roofing work, be paid
three thousand one hundred seventeen forty-five hundredths dollars. * * *
"Green & Wicks, Architects."

This was sent to the defendant by the architects, accompanied by
a letter in which they stated that they inclosed "final recommendation
in favor of Mr. J. H. Tilden for work on the Union Central Life Build-
ing, as per his bill attached." The statement thus furnished would
seem to be amply sufficient to inform the defendant that, in the opinion
of the architects, the plaintiff was entitled to his final payment under
the terms of the contract, which, as we have seen, he was not entitled
to until the work had been performed to the satisfaction of the archi-
tects. No fraud, mistake, or bad faith upon the part of the architects
in giving this certificate was charged upon the trial, and, in the ab-
sence of any of these elements, we think the certificate, within the
principle of the cases above cited, was the same, in effect, as if it had
contained the statement that the work was completed to the satisfac-
tion of the parties signing it. In view of the fact that the defendant
had virtually accepted the building, and that at the time the plaintiff's
demand was made it was in full occupation of the same, it may well
be doubted whether the plaintiff was required to furnish the certificate
of the architects that the contract had been fully performed to their

satisfaction, as a condition precedent to his right to insist upon the final payment. Smith v. Alker, 102 N. Y. 87, 5 N. E. 791; Duell v. McCraw, supra. But, without passing upon this question, it is apparent that the defendant waived whatever right it had to demand such a certificate by not placing its refusal to pay upon the ground that the one furnished did not fulfill the requirements of the contract. Wyckoff v. Meyers, supra.

There is no pretense that any fault was found with the form of the certificate prior to the commencement of this action, and as late as October 9, 1894, the defendant's president, in a letter to the plaintiff's attorneys, wherein he stated his reasons for refusing payment of the plaintiff's demand, and intimated that, if sued, the action would be defended upon the grounds therein specified, makes no allusion whatever to the insufficiency of the certificate; and we think that, in these circumstances, the trial court would have been justified in holding, as matter of law, that the defendant had waived any right which it might otherwise have had to insist that the architects' certificate should have been of a different character from the one furnished. Instead of taking this course, the question was submitted to the jury as one of fact; a disposition of the matter which certainly ought to evoke no complaint from the defendant. The learned counsel for the appellant insists, however, that the question of waiver was not properly before the court, inasmuch as it was not pleaded in the complaint. We do not regard this proposition as tenable, in view of the facts disclosed by the record; but, as we have held that the certificate was sufficient to answer the requirements of the contract, it is unnecessary to consider this aspect of the case.

Several exceptions taken to the rulings of the trial court during the progress of the trial are pressed upon our attention. We have given careful examination to the same, and, while one or two seem at first blush to be somewhat questionable, we are persuaded that, if erroneous, they were not sufficiently prejudicial in their character to require the granting of a new trial; and our conclusion of the whole matter is that the judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur.