JARED H. TILDEN, Respondent, *v.* THE BUFFALO OFFICE BUILD-ING COMPANY, Appellant.

*Architect's certificate — what is sufficient in form — when a failure to present an objection to its form waives the defect — when the certificate need not be furnished.*

An instrument headed "Final Recommendation," addressed to the president of a corporation in whose name a contractor has erected a building for it, executed after the corporation is in full occupation of the completed building and expressed in the following terms:

"We recommend, under the terms of the contract, dated April 26, 1893, for work upon Union Central Life Building, that Mr. J. H. Tilden, contractor for mason, iron, steel, carpenter, painting, glazing and roofing work, be paid three thousand one hundred seventeen forty-five-hundredths dollars. * * *

"GREEN & WICKS,
*Architects.*"

And accompanied by a letter to the corporation from the architects, in which they state that they inclose "final recommendation in favor of Mr. J. H. Tilden for work on the Union Central Life Building, as per his bill attached," is a sufficient compliance with the conditions of the contract under which the building was built, providing that payments are to be made upon the written order of the architects, and that "the final payment shall be made within

thirty days after this contract is completely finished, provided that in each of the said cases the architects shall certify in writing that all the work, upon the performance of which the payment is to become due, has been done to their satisfaction."

*Semble,* that where the owner, in stating to the contractor its reasons for refusing to make the final payment makes no allusion to the insufficiency in form of the certificate, it waives any right which it might otherwise have had to insist that the architects' certificate should have been of a different character from that of the one furnished.

*Quære,* whether the contractor was bound to furnish the architects' certificate, it appearing that, at the time he made his demand for final payment, the owner had virtually accepted, and was in full occupation of, the building.

APPEAL by the defendant, The Buffalo Office Building Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 21st day of May, 1896, upon the verdict of a jury, and also from an order entered in said clerk's office on the 5th day of May, 1896, denying the defendant's motion for a new trial made upon the minutes.

*Norris Morey,* for the appellant.

*Ansley Wilcox,* for the respondent.

ADAMS, J.:

On the 26th of April, 1893, the plaintiff, who is a contractor, entered into a written contract with one John H. Smith to erect a large office building in the city of Buffalo. By the terms of this contract the building was to be completed by the 10th day of April, 1894, and the price to be paid therefor was $124,000.

In the month of August following the execution of the contract the defendant was duly substituted as a party thereto in the place of Smith, who was at that time the defendant's president, and this action is brought to recover a balance of $3,117.45, which it is claimed is due the plaintiff upon the contract, and for extra work done and materials furnished by him, after deducting the sum of $371.27 for work and materials embraced in the contract which were omitted by direction of the defendant.

The plaintiff's demand consists of seven items, the first of which is for a balance of $1,700, claimed to be due upon the contract proper, and the remainder are for " extra work." With the exception

of the item of $459.25 for "extra work and materials, concrete in quicksand pockets," the correctness of the plaintiff's claim was not disputed upon the trial, but it was, nevertheless, asserted by the defendant that it was under no legal liability to pay the same for the reason that, at the time this action was commenced, the plaintiff had omitted to furnish the certificate of the architects which was required by the contract as a condition precedent to final payment, and for the further reason that the item of $459.25, above mentioned, was for work and materials which were properly embraced in, and contemplated by, the contract. It was further contended that the plaintiff had failed to comply with the requirements of the contract in regard to the quality of pine used for flooring, in consequence of which the defendant claimed to have suffered damage in the sum of $1,000, and this amount was set up in its answer by way of counterclaim to the plaintiff's demand.

The record in the case brings up for review several questions pertaining to these various defenses which arose during the progress of the trial, and in the decision of which it is alleged error was committed by the learned trial court which was prejudicial to the defendant's interest. To the consideration of these questions we will now direct our attention.

So far as the defense relied upon by way of counterclaim is concerned, but little need be said. The contract and specifications provided that:

"The finished wood floors of the entire building are to be of clear Georgia or Southern pine, thoroughly seasoned and kiln dried, matched and laid closely, and blind nailed to place. This flooring must be 1¼" thick, and the face not over 3" wide.

"This flooring must be of the very best selection, every board quarter-sawed, sometimes called 'riff-sawed,' and, unless it is perfectly well matched so that it lays thoroughly even and smooth, it must be hand planed after being laid."

The evidence on the part of the defendant tended to show that the material used in the floors was of an inferior quality to that above specified, in that it was what is termed "sappy," and that, in consequence of this defect, it very soon changed color and looked dark and dingy.

It was, however, made to appear upon the trial that there are sev-

eral grades of " Georgia or southern pine;" that the only grade which does not contain any sap is what is termed "heart-face" lumber, which is never used unless specifically mentioned in the contract; that the next grade, which is termed "first and second clear," contains ten per cent of sap, and a number of witnesses called by the plaintiff testified that the term "clear Georgia or southern pine" meant this grade, and that this was the grade used by the plaintiff in fulfilling his contract.

It was further contended by the plaintiff that the change in the color of the flooring was due to the fact that it had been improperly treated by the defendant after it was laid, and some evidence was given tending to sustain this contention.

It is very apparent, therefore, that as respects this particular feature of the case an issue of fact was raised, and as this issue was submitted to the jury in a charge which was exceedingly fair, it must be deemed settled by the verdict.

The defendant's contention in respect of the claim for extra work in the "quicksand pockets" is subject to very much the same stricture. It seems that the original specifications provided that:

"If any pockets of quicksand are found this contractor shall excavate the same and then fill in solidly with cement concrete and broken stone."

This provision was objected to by the plaintiff before bidding for the work, and the architects thereupon assured him that it was a mistake which would be corrected and that he might bid upon the assumption that he would not have to fill the quicksand pockets over one cubic yard in size without extra compensation. Subsequently the specifications were corrected so as to read :

"If any pockets of quicksand are found not larger than one cubic yard, this contractor shall excavate the same, and then fill in solidly with cement concrete and broken stone."

The defendant claimed that this alteration was unauthorized and was made by the architects without its knowledge and consent, but Mr. Smith testified that at the time the contract was signed it was understood that the architects were to prepare new specifications to conform to several changes which had been agreed upon, and it is conceded that a copy of the specifications as so amended and which

contained the alteration respecting the sand pockets was thereafter delivered to each of the parties, and that the one delivered to Smith was retained by him during the progress of the work, although he claims that he did not discover this particular change or hear anything in regard to it until the plaintiff presented his claim for extra work.

On the other hand, however, the plaintiff and his assistant, Mr. Flynn, both testified that Smith was present at the office of the architects when the subject was discussed and that it was then stated by Mr. Green, one of the architects, that the new specifications should be changed so as to conform to the assurance which had theretofore been given to the plaintiff.

Upon the trial it was contended by the plaintiff's counsel that the architects were authorized, as matter of law, to make this change, but the court expressly instructed the jury that such was not the case, and that so far as this item was concerned the plaintiff could not recover, unless they were satisfied from the evidence that Smith knew, and assented to, the change in the specifications at or before the time when the contract was actually signed. As has been indicated, the evidence upon this branch of the case was quite conflicting; and this being so, no sufficient reason is presented for interfering with the verdict, which in effect finds that the alteration was made with the knowledge and acquiescence of the defendant.

We come, therefore, to a consideration of what may doubtless be regarded as the paramount question in the case. At the time the plaintiff presented his claim and demanded payment thereof, the structure had been completed and was in the possession of the defendant. This fact makes it perfectly obvious that the amount claimed was in full satisfaction of all moneys which the plaintiff would be entitled to receive under his contract. In short, it was the "final payment" which the plaintiff was demanding, and both he and the defendant so understood it. The contract provided that payments were to be made upon the written order of the architects, "it being understood that the final payment shall be made within thirty days after this contract is completely finished, provided that in each of the said cases the architects shall certify in writing that all the work upon the performance of which the payment is to become due has been done to their satisfaction;" and it was insisted upon the trial

that no such certificate as is here contemplated was presented by the plaintiff, and that consequently he was in no position to enforce the payment of his claim. So much of this contention as is based upon the failure of the plaintiff to furnish a certificate which complied literally with the requirements of the contract is not controverted. Neither is it denied that a certificate of the architects was, within the strict requirements of the contract, a condition precedent to the right of the plaintiff to insist upon a final payment; but it is argued that a certificate which was in substantial conformity to these requirements was all that the defendant had a right to exact.

The object of the provision which we are considering was obviously to furnish satisfactory evidence to the owner that not only had the contract been fully completed, but that it had been performed in a manner satisfactory to the architects, upon whose superior judgment and experience in such matters reliance was placed. No precise form for this certificate was prescribed, and consequently a notification in any form, which would fairly and reasonably accomplish the purpose for which it was designed, and which was in effect what the contract called for, was doubtless sufficient. ( *Wyckoff* v. *Meyers*, 44 N. Y. 143.)

In the case of *Snaith* v. *Smith* (7 Misc. Rep. 37) the contract required, as a condition precedent to final payment, substantially the same certificate as the one specified in the present contract, but in lieu thereof the architect simply certified that there was due the plaintiff " the final payment on his contract  *  *  *  the sum of $1,169." It was held, upon the authority of *Wyckoff* v. *Meyers* (*supra*), that, when the architect certified that the last payment was due according to contract, it was equivalent to certifying that the work was fully done, and that the builders were entitled to the last payment.

In *Duell* v. *McCraw* (86 Hun, 331) it was held that an architect in certifying that a payment was due, which, by the terms of the contract, was payable " when foundation is complete," in effect certifies that the foundation was completed according to the contract.

In the case in hand the certificate was headed " Final Recommendation." It was dated February 7, 1895, and addressed to " Mr. Jno. H. Smith, President."

Then followed this language :

" We recommend, *under the terms of the contract*, dated April 26th, 1893, for work upon Union Central Life Building, that Mr. J. H. Tilden, contractor for mason, iron, steel, carpenter, painting, glazing and roofing work, be paid three thousand one hundred seventeen forty-five-hundredths dollars. * * *

"GREEN & WICKS,

"*Architects*."

This was sent to the defendant by the architects, accompanied by a letter in which they stated that they inclosed " final recommendation in favor of Mr. J. H. Tilden for work on the Union Central Life Building, as per his bill attached."

The statement thus furnished would seem to be amply sufficient to inform the defendant that, in the opinion of the architects, the plaintiff was entitled to his final payment under the terms of the contract, which, as we have seen, he was not entitled to until the work had been performed to the satisfaction of the architects.

No fraud, mistake or bad faith upon the part of the architects in giving this certificate was charged upon the trial, and in the absence of any of these elements we think the certificate, within the principle of the cases above cited, was the same, in effect, as if it had contained the statement that the work was completed to the satisfaction of the parties signing it.

In view of the fact that the defendant had virtually accepted the building, and that, at the time the plaintiff's demand was made, it was in full occupation of the same, it may well be doubted whether the plaintiff was required to furnish the certificate of the architects that the contract had been fully performed to their satisfaction, as a condition precedent to his right to insist upon the final payment. (*Smith* v. *Alker*, 102 N. Y. 87; *Duell* v. *McCraw*, *supra*.)

But without passing upon this question, it is apparent that the defendant waived whatever right it had to demand such a certificate by not placing its refusal to pay upon the ground that the one furnished did not fulfill the requirements of the contract. (*Wyckoff* v. *Meyers*, *supra*.)

There is no pretense that any fault was found with the form of the certificate prior to the commencement of this action, and as late as October 9, 1894, the defendant's president in a letter to the plaintiff's attorneys, wherein he stated his reasons for refusing payment

of the plaintiff's·demand, and intimated that, if sued, the action would be defended upon the grounds therein specified, makes no allusion whatever to the insufficiency of the certificate; and we think that, in these circumstances, the trial court would have been justified in holding, as matter of law, that the defendant had waived any right which it might otherwise have had, to insist that the architects' certificate should have been of a different character from the one furnished. Instead of taking this course the question was submitted to the jury as one of fact, a disposition of the matter which certainly ought to evoke no complaint from the defendant.

The learned counsel for the appellant insists, however, that the question of waiver was not properly before the court, inasmuch as it was not pleaded in the complaint. We do not regard this proposition as tenable, in view of the facts disclosed by the record; but as we have held that the certificate was sufficient to answer the requirements of the contract, it is unnecessary to consider this aspect of the case.

Several exceptions taken to the rulings of the trial court, during the progress of the trial, are pressed upon our attention. We have given careful examination to the same, and while one or two seem, at first blush, to be somewhat questionable, we are persuaded that, if erroneous, they were not sufficiently prejudicial in their character to require the granting of a new trial, and our conclusion of the whole matter is, that the judgment and order appealed from should be affirmed.

All concurred.

Judgment and order affirmed, with costs.